## ¡ADOLFO SIXTO

*v.*

## LAUREANO SARRIA.

Law, No. 158.

----

## PEDRO ROMERO

*v.*

## CH. LE BRUN.

Law, No. 339.

----

## CH. LE BRUN

*v.*

## PEDRO ROMERO ET AL.

Equity, No. 416.

----

## EX PARTE LAUREANO SARRIA, Application for Discharge on Habeas Corpus.

Law, No. 158.

----

1. When the maker of a promissory note, who has been cited in supplementary proceedings against the original payee, pays the principal and in-

Sixto v. Sarria.

terest into court, the court may direct said maker to file a bill of interpleader to require payee (defendant in judgment); the plaintiff in judgment, and the indorsee to litigate their respective rights.

2. In such a case substitute service on a nonresident defendant may be made by service upon his attorney at law in another case in the same court, brought to enforce the collection of the note.

3. Pending the decision of the interpleader suit, a stay will be ordered of an action on the law side of the docket by the indorsee of the note against the maker, to recover the principal and interest thereof.

4. When, in supplementary proceedings on a judgment at law, an order is made committing the defendant for contempt, consisting in failing to obey an order to pay the judgment, such an order trenches so closely on imprisonment for debt that it will be set aside, and the defendant discharged on habeas corpus, the Porto Rican statute of civil arrest prohibiting the taking of the body of a defendant in execution.

5. Mere suspicion that the defendant in judgment had money wherewith to satisfy the same is not sufficient, in the absence of positive proof to that effect, to authorize an imprisonment for contempt in refusing to obey an order to pay the judgment.

6. Pending the decision of the interpleader suit, the court will retain, of the money paid in by the maker of the note, a sufficient sum to answer to the judgment in the law case and interest thereon and costs.

7. The surplus in the registry will be paid to the indorsee of the note.

Opinion filed September 15, 1906.

---

*N. B. K. Pettingill, Esq.,* attorney for Adolfo Sixto.

*Willis Sweet, Esq.,* solicitor for Ch. Le Brun.

*Henry F. Hord, Esq.,* attorney for Pedro Romero and for Laureano Sarria in the supplementary proceedings and application for discharge.

RODEY, Judge, delivered the following opinion:

The controversy between these parties comes before the

court on this day to settle a very complicated situation of affairs. In a local court of Porto Rico, several years ago, the plaintiff brought proceedings which assumed several different forms, and resulted in a large amount of litigation in said local court, to establish his right as the owner of a half interest in his father's estate, the principal asset of which estate was a sum of money that was due to the same from the defendant Sarria. The matter finally got to the Supreme Court of the United States, and will be found fully set forth in the case of Sixto v. Sarrie, 196 U. S. 175, 49 L. ed. 436, 25 Sup. Ct. Rep. 186, where Mr. Justice Day sets forth the facts fully in the opinion rendered. The plaintiff in that suit recovered a judgment against the defendant Sarria without reference to the fact whether or not the said Sarria had theretofore paid the said sum to the other heir, the court holding that it was wrongfully paid.

When the cause was remanded to this court, the plaintiff, by counsel, proceeded, in supplemental proceedings, to call into court one Carlos Le Brun, and he was examined, but it appeared plainly from the evidence adduced at the hearings on such supplemental proceedings that Le Brun, although he owed the defendant Sarria, as he thought, some $24,000, positively asserted, as appears from the record on file, that the same was evidenced by a negotiable promissory note to Sarria, and that he had no knowledge whether the same had been transferred.

Shortly after the appeal to the Supreme Court of the United States, it appears that the defendant Sarria had disposed of all his property in Porto Rico and left for Spain, and the plaintiff, ascertaining that Le Brun was indebted to him, cited him in the supplementary proceedings to answer for the same.

The note in question, given by Le Brun to Sarria, was not

due until the following fall after the supplementary proceedings were had, in the spring of 1905. The court made an order in the supplementary proceedings at the time Le Brun testified, ordering him to pay the amount of the judgment into court when it should be due to Sarria, as per the note. Some time thereafter, Sarria returned to Porto Rico, and such proceedings were had as that he was called in the supplementary proceedings to give an account of his estate, and he testified therein that he had sold the note in question before the date that Le Brun testified, and long before it was due, to one Pedro Romero at Orense, in Spain, for practically its face value. Such further proceedings were had as that the court entered an order, finding that the said Sarria either was the owner of the note in question still, and that the transfer to Romero was not in good faith, or else that he had in his possession the proceeds thereof, or sufficient of the same to enable him to pay the judgment to the plaintiff. The court thereupon entered an order and served the said Sarria with a copy of it, ordering him to pay the said amount of money into court to satisfy said judgment and costs, within a short day, or, in default thereof, to abide the action of the court. He failed to pay the money and denied that he had any, and such proceedings were had as that the court committed him for contempt, and he so still stands committed.

An extensive legal battle occurred in this court about this time on the part of Sarria for his release, and in the supplementary proceedings, which it is unnecessary to detail.

Along in the fall of 1905, or some time thereafter, Le Brun, when his note to Sarria came due, was notified through a local bank that they had the said note for collection, and that it was the property of the said Pedro Romero of Orense, Spain. He had already paid some $14,000 of the money into this court

on the order made in the spring, commanding him to do so.
He thereupon, when Romero, through his agents, demanded
the payment of the note, tendered the receipt of the clerk of
this court for the amount paid here, and the balance in cash to
the bank, and demanded his note, which was refused. He there-
fore came into this court and deposited the entire amount of
the note and interest, and filed a bill in equity (No. 355),
seeking to ascertain to whom the said money should be paid, and
praying the court to relieve him from the danger of having to
pay it twice.

Thereupon, Romero, through his attorney, Henry F. Hord,
Esq., who is the same attorney who has represented Sarria
through the entire supplementary proceedings in this court and
all through his efforts to be discharged from the commitment
for contempt, brought a suit against the said Le Brun on the
law side of this court, which is number 339, seeking to recover
thereon.

This was substantially the condition in which the matter
stood at the time the present incumbent qualified as judge of
this court in June, 1906; that is, there was something over
$24,000 deposited by Le Brun in this court under a bill seek-
ing to ascertain who was entitled to the same. The defendant
Sarria was in jail, or constructively so, having been committed
for contempt in refusing to pay the money, as commanded by
the court.

The former judge, when he entered the order commanding
Le Brun to pay the amount of the plaintiff's claim into this
court, in the spring of 1905, worded his order unfortunately,
but specifically held, himself, thereafter, while he was still
upon the bench, in an opinion which is found in the files, that
this order of his was an interlocutory order, and not a final

Sixto v. Sarria.

judgment, as was, and is, strenuously contended by counsel for Sarria.

This court examined the question at considerable length and had several hearings in this supplementary proceeding, on the bill in equity and on the suit at law, and finally, on July the second, entered an order that the money paid into court be returned to Le Brun, on the ground that it was improperly here. From that order, counsel for plaintiff prayed an appeal and asked leave to be granted a supersedeas in the premises. The court examined this question at great length, and finally prepared its views intending to refuse the supersedeas in the premises, but did not file the same, and, in the meantime, ordered the clerk of the court not to pay the money over under the order of July the second, until further instructed by the court, which order has been obeyed. Then Mr. Sarria had a rehearing before the court of his writ of habeas corpus matter in his commitment for contempt, and the court denied the writ. He thereupon also made application to be granted leave to give a supersedeas pending his application for a writ of habeas corpus to the Supreme Court of the United States, and that matter is still pending.

The parties for the last three months, of their own volition, and at the suggestion of the court at times, have made many efforts to straighten out the tangle of these several complicated proceedings, and at the same time counsel for the respective parties have pressed the court for a decision of the matters, from time to time, as they failed to come to any agreement. The court ascertains from counsel for Le Brun that even if the money is now returned to him, he will not pay the note in possession of Romero at the present time, through fear of the plaintiff Sixto recovering in the premises against him, and he

thus be forced to pay the debt twice, but insists on his right to press his bill in equity, or a similar proceeding, to a finality.

Therefore, the court, considering all the premises and conditions, has made up its mind that the best thing that can be done is to permit Mr. Le Brun (and he has requested permission in that behalf) to file a new bill in equity against all of these parties, that is, against the plaintiff Adolfo Sixto, the defendant Laureano Sarria, and the said Pedro Romero, plaintiff in the action at law, forcing them to litigate their rights in response to said bill in this court, so that he may be protected by the final judgment of this court against liability more than once upon the note in question.

The court has concluded that this in the true solution of the complication and it therefore will permit such a bill to be filed, and will grant to the said Le Brun service by substitution upon Henry F. Hord, Esq., counsel for Romero in the suit at law, the said Romero being a resident of Spain. And like substitute service will be granted against Sixto, who lives at St. Thomas, some distance from this court, the service to be had upon N. B. K. Pettingill, Esq., his attorney here.

Therefore, any order or judgment heretofore entered by the former judge or the present judge in this supplementary proceeding or in any other of the proceedings or suits herein referred to, inconsistent with these views here expressed, is hereby set aside and modified to the extent that may be necessary.

The court will therefore order that the suit at law by Romero on the note in question and the supplementary proceedings as to this fund be held in abeyance until the determination of the equity suit here permitted to be filed, and the court will further enter a proper order, as it believes that the action of the former judge, in some measure, at least, in committing the said defendant Sarria for contempt, entrenched upon the rule against imprisonment for debt, and it will therefore rescind

Sixto v. Sarria.

anything it may have done heretofore in the premises, to the contrary, and grant him his writ of habeas corpus and discharge, and an order to that effect will be entered. The court considers that so long as it keeps the money, or sufficient of the same, in its custody, to pay the debt in question, that when the same is paid, the plaintiff is satisfied; and if, on the trial under the bill in equity here permitted to be filed, it shall develop that the money in reality belongs to Romero, then, as this not being a bankruptcy proceeding, the court cannot see how the finding of the former judge, that Sarria has the money and can pay it, can be used as a reason for keeping him in jail indefinitely. We would not feel authorized to do so, and we therefore think that he ought to be discharged, because the court's former order, committing him for contempt, was of necessity based upon a suspicion that he had the money, as positive proof that he had it was impossible, he claiming, although his evidence looked incredible, that he had spent it. We fully respect the rule empowering courts to commit for contempt, but, with equal force, we respect the familiar principle against imprisonment for debt, and that is all that the finding and commitment referred to would amount to; at least, after it is determined, if it shall be found, that Romero is the owner of the note in question in good faith, for value; and, if it is determined otherwise, the plaintiff is satisfied.

It is further ordered that nothing in this order or opinion shall be held to prevent the said Pedro Romero or his counsel, duly authorized, from applying to this court at any time hereafter to withdraw from the registry such portion of the fund now on deposit and put there by the said Le Brun, over and above what may be necessary to satisfy the Sixto claim with costs and interest, in case of his recovery in the premises. Provided that if he does so withdraw the said money (the court

reserving the right to fix the amount he can withdraw), he shall indorse the same as a payment upon the said note, and must at the time exhibit the note, with that indorsement made upon it, to the clerk of this court.